SMITH et al. v. WORTHINGTON et al.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

No. 91.

1. Executors and Administrators—Probate Practice—Orders—Equitable Relief.

Under the provisions of the Arkansas statutes regulating the administration of estates, where a meeting of the heirs of the deceased intestate is held, representatives of four fifths of the interests in the estate being present, and it is agreed that certain persons shall be appointed administrators, one of whom is to reside on and manage the realty, neither

those who are present, and consent to the agreement, nor those who are absent, but acquiesce, and make no objection for 12 years, can refuse to be bound thereby. And the heirs, after so long a time, cannot obtain relief in equity on the ground that orders made by the probate court for the renting of the realty and for other purposes, in pursuance of the agreement, are without authority in law, unless it appears that fraud was practiced upon the probate court or upon the heirs.

**2. SAME—ALLOWANCES TO ADMINISTRATORS—COMMISSIONS AND FEES.**
The amount proper as allowances to administrators for commissions, traveling expenses, and counsel fees, is within the jurisdiction of the probate court, and its action therein cannot be impeached in a court of equity unless it appears that the probate court was imposed upon, or that the heirs were fraudulently misled or deceived, and thereby deprived of the opportunity to be heard in such court.

**3. SAME—FRAUDULENT SALE—AFFIRMANCE BY HEIRS.**
Where a bill in equity prays in part that a sale of lands ordered by the probate court be set aside for fraud, and this part of the prayer is omitted in an amended bill, such amendment is a waiver of objections, and an affirmance of the sale, which should not be set aside by a court of equity unless it appears that the trustee wrongfully sacrificed the property, or was in fact interested in the purchase.

**4. SAME—EQUITABLE RELIEF.**
Where lands are sold by an administrator for more than their appraised value, and a half interest therein afterwards sold to the administrator, in the absence of evidence showing that the lands did not sell for their full value, or that the administrator was interested in the purchase at the administrator's sale, a court of equity should not charge the administrator with any greater sum than he in fact received at such sale.

**5. SAME—OMISSIONS IN ACCOUNTS—DELAY—FEDERAL COURTS.**
Omissions in the annual accounts of administrators, and the fact that the settlement of the estate was prolonged beyond the statutory period for the benefit of the administrators, in the absence of evidence of some fraudulent omission to account for property, such as would justify a court of equity in opening the administrators' accounts, afford no ground of equitable relief in a federal court, nor can a federal court compel the closing of an administration, but the remedy is by appeal or writ of error in the state courts.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

In Equity. Suit by Mary Smith, Richard A. Smith, and others against Isaac M. Worthington, in his own right, and as administrator of the estate of Elisha Worthington, deceased; Abner Gaines, administrator, substituted for W. W. Rose, deceased; William Starling; and William W. Ford,—for fraudulent and improper administration of deceased's estate. The bill was dismissed below, and complainants appeal. Affirmed.

Statement by SHIRAS, District Judge:

From the record in this cause it appears that Elisha Worthington, for a number of years prior to November, 1873, resided in Chicot county, Ark., being the owner of three plantations in that county. He died intestate, and on the 25th of November, 1873, letters of administration were duly issued to Edward T. Worthington and Isaac M. Worthington by the probate court of the county, the administrators giving bond for the faithful performance of their duty, in the sum of $30,000, with W. W. Rose and William Starling as sureties thereon. The property of the estate passing into their hands consisted of the three plantations above named; certain mules, wagons, and other farming implements; moneys due; and other like personal property. About the time the letters of administration were granted a meeting of the heirs interested, who were quite

numerous, was held, at which about four fifths of the interests were represented, and at which meeting it was agreed that Edward T. Worthington was to take the active control over the property, and that the administrators, in addition to the statutory commissions, were to be paid an extra salary in such sum as might be fixed by the probate court. In pursuance of this arrangement Edward T. Worthington had the immediate charge of the property until April 1, 1875, when, by arrangement between the coadministrators, the active management was assumed by Isaac M. Worthintgon. At the meeting in November, 1873, the general policy to be followed in handling the property was discussed, and seems to have been settled upon; the plan being to rent out small parts to tenants for a cash rent.

On the 13th of December, 1873, there was filed in the probate court of Chicot county the report of the appraisers appointed to value the personalty belonging to the estate, which report was approved; the value of the personalty being fixed at $2,160.75. On the same day was presented a petition of the administrators, asking authority to rent out Red Leaf plantation for the year 1874 in parcels to tenants, the administrators to retain the general management and control of the property; and an order was granted, authorizing the administrators to rent all the realty belonging to the estate, the same to remain under the general management of the administrators, to which end one of the administrators was to remain upon the premises. On the same day an order was granted, directing the sale at auction of the personalty on January 5, 1874, with leave, however, to sell before that day, at private sale, to any tenant upon the property, holding for the year 1874, any mule belonging to the estate, for a sum not less than the appraised value, to be secured by a lien on the mule, or on the crop raised by the tenant. From time to time further orders were made by the probate court, for the renting of the lands; for the sale of notes and accounts due the estate; for the employment of counsel in defending suits against the estate; and other like matters. In each year the administrators filed a report of their doings, including an account of receipts and expenditures, to which in some instances exceptions were filed on behalf of some of the heirs. These accounts were finally adjusted, and orders entered approving the same as corrected. At the October term, 1880, of the probate court a petition was filed by the administrators showing that there was then due from the estate, including the expenses of administration, the sum of about $17,000, and that there was in the hands of the administrators, to meet the same; the sum of $12,500, including the rents of 1880, which were not then due and that to pay the debts due a sale of the realty was necessary. Upon this showing the court ordered that the three plantations, or so much as might be necessary, should be sold at public auction on January 10, 1881. The sale was had, and reported to the court; it appearing that the lands were appraised at $21,038, and had been sold to W. W. Ford for the sum of $25,815, which sale was thereupon confirmed by the court. By the terms of sale one third was paid in cash, and the remainder in one and two years. On the 14th of January, 1884, the eighth annual account of the administrator was filed, showing all debts paid, and that there was left for distribution among the heirs the sum of $10,342.60. This account was approved, and distribution ordered of the balance in the hands of the administrator. For some reason, not made clear upon the record, the distribution of this sum among the heirs was not finally completed until in 1888; and at the October term, 1888, of the probate court, the following order was made: "On this day was presented the receipts of Mrs. Sallie W. Dugan and of William Kinchloe, whose shares, of $258.67 each, remaining in the hands of the administrator at the time of the approval of the final account current of said administrator, approved at the July term, 1885, of this court, by the said administrator, with the prayer that he be discharged as such administrator as to these items, as he had been as to all remaining portions of said estate at said July term, 1885; and the court being well and sufficiently advised in the premises, and being of the opinion that said administrator should be discharged as to these items, it is ordered, adjudged, and decreed that the said administrator be, and he is hereby, fully discharged as to the said two items of $258.57 each, as well as to all other matters connected with said estate."

On the 14th of December, 1885, the bill in this cause was filed in the United States circuit court for the eastern district of Arkansas by Mary Smith and Richard A. Smith, her husband, on their own behalf and that of such other heirs of Elisha Worthington as might join in the proceedings,—the defendants being Isaac M. Worthington; W. W. Rose, William Starling, (these two being sureties on the bond of the administrators;) and W. W. Ford.

The bill recites at length the acts of the administrators, and the making their annual reports to the probate court, and charges that these are false and fraudulent, because they contained charges for extra services in managing the property, improper commissions for traveling expenses, and that the annual accounts contain items not properly allowable. It is further charged that there was no authority for the renting the plantations from year to year, as was done, and that, when the order for the final sale of the realty was made, it was unnecessary, and therefore void, and that Isaac M. Worthington was interested in, and became a beneficiary of, the sale of the realty to W. W. Ford. By an amendment to the bill the portion thereof praying that the sale of the lands to Ford should be set aside for fraud was stricken out. A number of the other heirs of Elisha Worthington, by leave of court, were admitted as co-complainants. The defendants answered the bill, and the case, upon the pleadings and proofs, was submitted to the court; and a decree for defendants was ordered, dismissing the bill for want of equity.

U. M. Rose and G. B. Rose, for appellants.

D. H. Reynolds, for appellees.

Before SANBORN, Circuit Judge, and SHIRAS, District Judge.

SHIRAS, District Judge, (after stating the facts.) Counsel for the appellants, in the brief and argument submitted by them, have very fully discussed the several provisions of the statutes of Arkansas regulating the method of administering the estates of decedents, and have pointed out the various proceedings had in the course of the administration of this estate, which, it is claimed, were without warrant of law. These may be grouped under five general heads, as follows: First, there was no authority in law for the orders made touching the renting from year to year the realty belonging to the estate, nor for incurring expense in repairing the fences and cabins upon the plantations, nor for any of the expense created thereby; second, the allowances made from year to year for the traveling expenses, commissions, and extra compensation to the administrators were illegal and fraudulent; third, there was no authority in law for the order providing for the sale of the realty; fourth, there were omissions in the annual accounts of the administrators of property or money with which they should have charged themselves; fifth, the settlement of the estate, instead of being closed up within the statutory period, was prolonged for years, to the detriment of the heirs, and to the benefit of the administrators.

To obtain relief in a court of chancery in cases of this kind, it is not sufficient for the complainant to show that in the progress of the administration, as conducted and controlled by the proper probate court, errors both of law and fact may have been committed.

Thus in Jones v. Graham, 36 Ark. 383–401, it is said that—

"All persons interested in the action of the administrator, to be affected by his settlement, are charged with due notice of its filing. They are required to follow the regular statutory proceedings of the probate court, and take notice of what may affect them. Administrations must, perforce, go through these

courts; and they would be attended with additional hardships, delays and expense, if special notice to every one interested was required. * * * There are many allowances of an improper nature, especially concerning attorney's and agent's fees, and, as already noticed, commissions. The court seems to have been more liberal to the administrator than is consistent with a due regard to the rights of the heirs and distributees. These objectionable points, except as above stated, all range themselves under the class of errors. There is very little of a material nature which might not have been corrected at the time, or prevented, if the guardians of the children, or their mother, or any friend, had taken an interest in their affairs. The error should have been corrected by appeal, or some other supervisory proceeding."

In Grocery Co. v. Graves, 43 Ark. 171, the court said:

"This is a bill in chancery to open an administrator's account, which has been confirmed by the probate court, for alleged fraud in obtaining credits for traveling expenses while on business of the estate, and for excessive commissions. It was stated that the clerk had omitted to give notice of the filing of said account. The bill was dismissed on demurrer. It is the settled doctrine of this court that mere errors of the probate courts in making allowances to administrators can be corrected only on appeal, and that they afford no ground for impeaching the settlements in a court of chancery. Ragsdale v. Stuart, 8 Ark. 268; Ringgold v. Stone, 20 Ark. 527; Mock v. Pleasants, 34 Ark. 64; Jones v. Graham, 36 Ark. 383. There is no pretense that these allowances were obtained by misrepresentation, deception, or imposition upon the court, but only that they were illegal. It is a very great irregularity for the probate court to confirm an administrator's account before the notice prescribed by law has been given. But the clerk's omission of his duty does not render the account fraudulent."

Without attempting an exhaustive definition of the grounds necessary to exist to sustain a bill in equity to set aside the judgments and orders of a court acting within the general lines of its jurisdiction, it may be said, generally, that it must appear that, in obtaining the judgment complained of, fraud has been practiced upon the court rendering the judgment, or upon the party complaining of the judgment, whereby he was prevented from appearing or being heard, or was kept in ignorance of some material matter, and thereby prevented from properly securing his rights; and, futhermore, it must appear that the party invoking the aid of the court of equity is himself free from fault or negligence. Insurance Co. v. Hodgson, 7 Cranch, 332; U. S. v. Throckmorton, 98 U. S. 61.

Under the provisions of the statutes of Arkansas regulating the administration of estates, the heirs and others interested therein are bound to take notice of the filing of the reports made annually, and the other statutory steps taken in the regular course of administration. They have the right to appear and be heard in the probate court for the protection of their rights, and they can invoke the aid of that court in controlling the action of the administrator, and by appeal or otherwise can invoke, also, the supervisory control of the supreme court of the state, so that ample provision is made for the protection of the rights of all parties interested in estates. The provisions thus made for the benefit of those interested in estates are not, however, self-acting or self-executing. To be available they must be set in motion by those for whose protection they are created; and unless prevented from so doing by some fraud, deception, accident, or mistake, a failure to avail one's self of these statutory methods will

be deemed to be negligence, and to be a bar to invoking the aid of a court of chancery. In the light of these general rules, let us examine briefly the several grounds relied upon by complainants for invoking equitable revision of the administration proceedings connected with the estate of Elisha Worthington. It is said that there was no authority in law for the orders made for the renting, from year to year, of the realty belonging to the estate, nor for the incurring the expenses caused thereby; that the power of the probate court is merely to subject the lands to the payment of the debts due at the time of the death of the intestate; and that the heirs, subject to the rights of creditors, are entitled to the rents and profits of the realty. Granting that such is the law, the record shows that the complainants did not assert their rights at the proper time. The evidence shows that at the time of the death of Elisha Worthington, the plantations owned by him were in bad condition. The levees needed for their protection were greatly injured, and no rents or profits could be expected therefrom, unless outlays were made thereon, and care and supervision over the same were strictly exercised. The record shows that the heirs of the deceased were very numerous, numbering at least 40, and widely scattered. It also appears that when the letters of administration were issued, in November, 1873, there was a family meeting at which there were representatives of four fifths of the interests in the estate, and at this meeting it was agreed that E. T. Worthington and Isaac M. Worthington should be appointed administrators, one of whom was to reside upon the realty, and have the active management thereof, and for his services was to be paid such sum, in addition to the statutory commissions, as might be fixed by the probate court. There certainly appears nothing illegal or inequitable in the arrangement thus agreed upon. Certainly those who were present, and consented thereto, should be bound by it; and those who were not then represented, but who have for years acquiesced in what was then done, and who never expressed dissatisfaction with the action then taken, should now be held equally bound. Until the bill was filed in the present case, in December, 1885, more than 12 years after this arrangement was made, not a single one of the heirs of Elisha Worthington made any objection to the action taken, or expressed even a wish for a change in the management of the property of the estate. If no letters of administration had ever been taken out, but this family meeting had been held in November, 1873, and E. T. Worthington and Isaac M. Worthington had been selected to take charge of the property in the interest of all the heirs, and they had in fact done so, and had continued such management for a period of 12 years, without let or hindrance, certainly a court of equity, if then appealed to, could not rightfully ignore the family arrangement thus entered into, and acquiesced in for so many years, and treat the parties who had undertaken the supervision of the property as wrongdoers from the beginning. On the contrary, it would be the duty of the court to recognize this arrangement as valid, and to settle the rights of the parties accordingly. Certainly the legality of the arrangement made for the management of the property was not vitiated because the parties intrusted with the management of the

realty were appointed the administrators of the estate, and thereby became subject to the control of the probate court. The action of the probate court in regard to the renting of the realty, thus recognizing the family agreement entered into, cannot be excepted to on the ground of a want of authority in the court to control the real estate, and its rents and profits, as against the heirs, for in so doing it was simply recognizing the action taken by the heirs for the protection of their interests in the realty. In connection with this general subject, the action of the administrators in selling certain mules to the tenants on the realty, in order that they might be enabled to make a crop, and the order of the probate court authorizing such action, are vigorously assailed as without warrant of law, because the statutes of Arkansas require the personalty to be sold at public auction. Such action could affect only two classes of persons interested in the estate, to wit, creditors and the heirs. All the debts of the estate have been paid in full, and the creditors have never objected to this action on part of the court and the administrators. By the family arrangement already referred to, the administrators undertook the management of the realty. The cultivation of the plantations, whether done directly by the administrators, or indirectly through tenants, would require the use of mules. If the mules already on the plantations were sold at public auction to third parties, the administrators would be compelled to supply their places with others, or the crop could not be raised. It is not made to appear that any loss was caused to the heirs by the action complained of; and certainly the administrators, acting as trustees for the heirs under the arrangement already described, cannot be held liable for the value of the mules, when it does not appear that the heirs have not received the full value thereof.

The second general ground of exception to the action of the probate court and the administrators in the settling of the estate is that excessive commissions and allowances for traveling expenses and for extra compensation to the administrators were authorized by the court. The amounts to be allowed for commissions, traveling expenses, and counsel fees for defending the suits against the estate were all matters clearly within the jurisdiction of the probate court; and its action therein cannot be impeached in a court of equity, except it appears that the probate court was imposed upon, or that the heirs were fraudulenly misled or deceived in regard thereto, so that they were deprived of the opportunity to be heard in the probate court. There is nothing in the evidence upon which to found the claim that either the court or the heirs were fraudulently deceived in regard to these matters; and, as no appeal was taken from the orders of the court in readjusting and settling the annual reports of the administrators, the same are conclusive. In regard to the allowances made from time to time for extra compensation to the administrators, acting in the capacity of trustees for the heirs in the management of the realty, no ground for equitable relief against the same is shown in the evidence.

It had been agreed that the trustees should be paid such sum as the probate court would allow as proper compensation. From year

to year the allowance was made without objection from any one. The evidence justifies the finding that the heirs had agreed to the payment of a proper sum to be fixed by the probate court. That court has fixed the amount in settling the annual accounts, and no one has excepted thereto. It is a general rule of equity that in settling trusts the court may allow proper compensation for services rendered by a trustee. Lent v. Howard, 89 N. Y. 179; Bendey v. Townsend, 109 U. S. 665, 3 Sup. Ct. Rep. 482.

The third ground relied upon for equitable relief is that there was no authority in law for the order providing for the sale of the realty. In the amendment filed to the bill the complainants withdrew that part of the prayer for relief which asked that the sale of the lands might be set aside for fraud, and that they be sold under the direction of this court, and that the administrators be charged with the reasonable rents of the lands while in their possession. In cases of sales actually ordered and had, but without sufficient authority therefor, the owners of the realty may waive the question of authority, and affirm the sale, and this is the effect of the amendment to the bill in this instance. The sale being affirmed, it stands as though there had been originally sufficient authority for making it, and the owners of the realty are remitted to the proceeds realized, unless possibly in cases wherein it is proven that the property was sacrificed wrongfully by the trustee, and where in fact it appears that the trustee was interested in the purchase.

It is charged in the bill that Isaac M. Worthington was in fact interested in the purchase made of the realty by W. W. Ford, and that the same was sold for less than its fair value, but there is no sufficient evidence to support these allegations. The lands were appraised by three appraisers at $21,038, and were sold to Ford for the sum of $25,815. Ford testifies that he bought the lands at the administrators' sale, and that he afterwards sold Isaac M. Worthington a half interest therein. The evidence wholly fails to shows that the lands did not sell for all they were worth, or that the administrator was interested in the purchase made by Ford. There is nothing, therefore, made to appear which would justify a court of equity in charging the trustee for any sum greater than that he in fact received from the purchaser of the realty, and which he reported to, and accounted for in his settlement of the estate in, the probate court.

In regard to the fourth and fifth grounds of attack upon the settlement of the estate, to wit, that there were omissions in the annual accounts of the administrators, and that the settlement of the estate was prolonged beyond the statutory period, for the benefit of the administrators, it is sufficient to say that there is not evidence of any fraudulent omission to account for property, of such a nature as to justify a court of equity in opening up the administrators' accounts, and certainly no action can be taken in the courts of the United States to compel the closing of an administration. Whether there are circumstances which require the keeping open of an estate is primarily for the probate court to determine, and its action can be controlled by the state courts having direct supervisory power over it.

If the complainants herein desired to bring about a more prompt administration of this estate, the way was open to them by proper action in the state courts. Having neglected to avail themselves of the proper remedy, they cannot complain in this court of the results of the delay, for which they are partly responsible. In fact it may be said generally of the attack made upon the proceedings connected with the settlement of the estate now in question that it is largely based upon matters which were entirely within the control and discretion of the probate court in the first instance. It appears more than possible that many of the criticisms made upon the action of the administrators have good foundation, and if exception had been taken thereto at the proper time, and in the proper court, much that is now complained of might have been avoided. We agree in general with the views advanced by counsel touching the evil of allowing estates to remain open without good reason, and in condemning the absorption of the property of estates in useless expenditures and liberal allowances for commissions and the like; but the remedy for such evils does not lie in encouraging the parties interested in the estate to remain inactive for years, and then, when the estate has been finally wound up by the probate court, to maintain a bill in equity against the administrator and his sureties, which in effect only proposes to reinvestigate and resettle the accounts of the administrator, which have already been passed upon and approved by the court primarily charged with that duty. The remedy for these evils, as is pointed out by the supreme court of Arkansas, consists in the exercise of diligence and watchfulness on the part of those interested in the estate, whereby all mistakes or wrongs can be promptly righted, and an effectual remedy be provided against the recurrence thereof in the future.

Under the facts developed in the evidence in this case, we find no sufficient ground calling for the interposition of a court of equity in setting aside the order of the probate court discharging the administrator and his sureties from further liability and in undertaking to restate the accounts passed upon by that court. The decree of the circuit court, dismissing the bill on the merits, is therefore affirmed, at costs of appellants.